(e)     Accounting/Statements. (i) No payment for a Stage Production may be cross-collateralized with or set-off against any amounts for any other Stage Production licensed hereunder. Amounts due for one Stage Production may not be used to recoup amounts for any other Stage Production, or *vice versa*. (ii) Financial Records: Licensee will maintain accurate records in local currency of all financial transactions regarding each Stage Production using generally accepted accounting principles on a consistent, uniform and non-discriminatory basis until three (3) years after the Agreement Term and during any period while a dispute about payments remains unresolved. The records will include all Gross Receipts derived, all expenses paid, all allowed adjustments or rebates made, all cash collected or credits received, and all other information necessary to render any statement due. Unless Licensor gives Notice approving otherwise all records will be maintained on a cash basis, and if Licensee permits any off-set, refund or rebate of sums due Licensee, such sums will nonetheless be included in Gross Receipts. Licensee will also keep full and accurate copies of every statement, contract, electronic record, audit report, correspondence and other writing for each Stage Production. (iii) Statements - Contents: Starting as of the date hereof, Licensee will furnish Licensor with a statement in English (and, if requested, supporting documentation) for each Stage Production that identifies from the time of the immediately prior statement, if any, all Gross Receipts derived, all recoupable expenses paid (identifying to whom they are paid), and all exchange rates used. If the Territory contains more than one country, the information will be reported separately for each country and consolidated for the entire Territory. The information will be provided in reasonable detail on a current and cumulative basis. (iv) Statements - When Rendered: Licensee will render statements for the following periods: (i) quarterly through the end of the Agreement Term and as long thereafter as Gross Receipts are derived by Licensee. Each statement must be delivered to Licensor within one (1) month after the end of the period for which it is rendered. However, no statement need be rendered for any period in which there are no Gross Receipts, but if Licensor has not received a statement for six (6) months, Licensee will provide a current statement within one (1) month of Licensor's request. (v) Audit Rights: Until three (3) years after the Agreement Term, Licensor may on fifteen (15) days' prior Notice examine and copy, on its own or through its auditors, Licensee's financial records regarding each Stage Production. The examination will be at Licensor's expense unless it uncovers an underpayment, uncontested or later determined due, of more than ten percent (10%) of the amount shown due Licensor on the statements audited, in which case Licensee will pay the costs of the examination on demand.

5.     Recordings. Licensee shall not record performances of any Stage Production (whether by audio, or audiovisual means) for any purpose except that Licensee may videotape each performance of the applicable Stage Production for the sole purpose of providing a home video copy of such performance to the audience member who plays "Johnny Utah" in such performance, for such audience member's private use only.

6. **Indemnification.** Licensee hereby indemnifies and defends Licensor and shall hold Licensor harmless from and against any and all claims, liabilities, losses, costs or expenses, including without limitation reasonable outside attorneys fees and costs (collectively, "**Losses**") arising out of Licensee's breach of this Agreement and presentation of the Stage Productions, except to the extent such Losses arise out of any claim that Licensor does not own all right, title and interest in the Picture and therefore was not authorized to license the rights licensed to Licensee herein. Further, it is Licensee's sole responsibility to pay any and all costs, royalties, residuals, etc. to anyone associated with the Picture, including but not limited to WGA residuals which may be owing to any writer on the Picture as a result of Licensee's exploitation of the Rights granted hereunder.

7. **Termination; Remedies.** The license hereunder shall automatically terminate if more than three (3) months elapses without a performance of a Stage Production. The license herein granted shall terminate upon written notice of termination at Licensor's election at any time after any of the following: (a) the failure of Licensee to make any payment within ten (10) days of the date of Licensor's notice that payment is overdue; (b) the failure of Licensee to perform any other material or substantial obligation hereunder, provided said failure is not remedied within ten (10) days after delivery of notice of such failure; and (c) Licensee becoming bankrupt or insolvent or suffering seizure, possession or control by a trustee, or suffering dissolution of its existence or merger or consolidation with any other company or corporation if such event is not stayed or cured within thirty (30) days of such declaration. Any termination pursuant to this Paragraph of the license herein granted shall be without prejudice to, and shall not lessen or impair any and all rights and remedies of Licensor, to or with respect to all sums due Licensor hereunder and all damages and other relief (including, without limitation, injunctive relief) arising from the failure of Licensee to perform its obligations hereunder.

8. **House Seats; Complimentary Tickets.** For each regular evening and matinee performance of the Stage Productions, if and to the extent requested by Licensor, Licensee shall cause two (2) pair of adjoining house seats, in a premiere location, to be made available at the box office for use free of charge by Licensor or its designee(s). To the extent Licensor desires tickets to any given performance, Licensor shall notify Licensee at least seventy-two (72) hours in advance of such performance.

9. **Jurisdiction; Governing Law.** By execution and delivery of this Agreement, Licensee and Licensor each respectively submits generally and unconditionally to the exclusive jurisdiction of the state and federal courts located in Los Angeles, California, and irrevocably waives any objection either party may now or hereafter have as to the venue of any such action or proceeding. Each party consents to the service of process out of any of the aforementioned Courts by mailing copies thereof by certified mail, postage prepaid, such service to become effective three (3) business days after such mailing. Nothing herein shall effect either party's right to service of process in any other manner prescribed by law. This Agreement shall be construed and interpreted in accordance with the law of the State of California applicable to

4

contracts executed in and intended to be performed entirely within the State of California and without regard to its conflict of law principals.

10. <u>Notices.</u> All notices required or desired to be given hereunder by either party shall be given by personally delivering, mailing (certified mail, return receipt requested) or faxing the same to the other party at the address set forth in this Paragraph, or at such other address as may be designated in writing by such party in a notice to the other party given as aforesaid.

| | |
|---|---|
| Licensor: | LEI Development Projects, Inc.<br>2441 Glendower Avenue<br>Los Angeles, CA 90027<br>Fax: (818) 980-4400<br>Attn: Chris Taylor |
| With a courtesy copy to: | Stroock & Stroock & Lavan LLP<br>2029 Century Park East, Suite 1600<br>Los Angeles, CA 90067<br>Fax: (310) 556-5959<br>Attn: Matthew C. Thompson |
| Licensee: | New Rock Theater Productions LLC<br>923 3/4 N. Beaudry<br>Los Angeles, CA 90012<br>E-mail: newrocktheater@gmail.com<br>Attn: Eve Hars |
| With a courtesy copy to: | Sendroff and Baruch, LLP<br>1500 Broadway, Suite 2001<br>New York, NY 10036<br>Fax: (212) 840-6401<br>Attn: Jason Baruch |

12. <u>Headings.</u> Paragraph headings used herein are inserted for convenience only but are not part of this Agreement.

13. <u>Modifications and Alteration</u>. This Agreement sets forth the entire agreement between the parties hereto and replaces and supersedes all other agreements relating to the subject matter hereof. This Agreement cannot be modified, altered, amended or otherwise changed except by an agreement in writing signed by the parties hereto.

14. <u>Construction.</u> Both parties participated in the negotiation and drafting of this Agreement. Accordingly, any rule of law requiring that any ambiguity in this Agreement be construed against the drafter hereby is waived and acknowledged to be of no force or effect.

15. <u>No Joint Venture.</u> Nothing herein contained shall be deemed to constitute a partnership or joint venture between the parties hereto. However, the parties agree that within twelve (12) months of the date hereof, if Licensor requests in writing, Licensor and Licensee will explore setting up some kind of a partnership or LLC structure in order that they may jointly exploit the Rights granted hereunder. If Licensee refuses to negotiate such a structure in good faith, then Licensor shall be under no obligation to extend the Term beyond December 31, 2012.

16. <u>Merchandising.</u> Licensor grants Licensee the right to sell T-Shirts featuring the title of the Stage Production. Licensee must obtain written permission from licensor for any other merchandise sold featuring the title of the Stage Production. All proceeds derived from any merchandising shall be included in the Gross Receipts.

17. <u>Assignment.</u> Licensee shall not assign this Agreement or its rights or obligations hereunder to an unrelated third party without the prior consent of the Licensor, such consent not to be unreasonably withheld or delayed. Licensor has the express right to fully assign this Agreement and its rights and obligations hereunder.

18. <u>Insurance.</u> To the extent Licensee elects to procure insurance in connection with the Stage Productions (e.g., liability insurance and/or errors & omissions insurance), Licensor shall be named as an additional insured thereon.

19. <u>Counterparts; Fax/Scan Signatures.</u> This Agreement may be executed in facsimile or electronic counterparts, all of which taken together shall be deemed one (1) original.

IN WITNESS WHEREOF, the parties have hereunto set their hands the day and year first set forth above.

LEI DEVELOPMENT PROJECTS, INC.

By: _____
Print Name: Christopher W. Taylor
Title: President

NEW ROCK THEATER PRODUCTIONS LLC

By: _____
Print Name: Eve Hars
Title: Owner/member

6

JPB/NewRock/ShortFormLicense050509