UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JAIME KEELING,

                    Plaintiff,

          v.

NEW ROCK THEATER PRODUCTIONS,
LLC, EVE HARS, and ETHAN GARBER,

                    Defendants.

10 Civ. 9345

**OPINION**

          This is a copyright dispute between plaintiff Jaime Keeling and defendants Eve Hars,

Ethan Garber, and their production company, New Rock Theater Productions, LLC.  The

work at issue is a theater production called *Point Break LIVE!*

          A jury trial was concluded in this case on December 7, 2012.  The jury found in

Keeling's favor, and concluded that defendants infringed Keeling's copyright in the work.

The jury also found, as a prerequisite to its finding of infringement, that *Point Break LIVE!*

made fair use of the film *Point Break.*  On January 10, 2013, the court permanently

enjoined defendants from staging additional infringing performances of the work.

          Hars now moves to stay the enforcement of that injunction pending her appeal to the

Second Circuit Court of Appeals.  The motion is denied.[1]

---

[1] It should be mentioned that, though Hars is correct that her request for additional time to oppose plaintiff's motion
for a permanent injunction was never officially filed due to some confusion regarding her representation, the court
nonetheless did receive and review it.  And, per Hars' request, the court considered the arguments she presented in

Whether to stay enforcement of an injunction pending appeal is left to the discretion of the court. It is the movant's — Hars' — burden, however, to demonstrate that the circumstances justify the court's exercising this discretion to grant a stay. <u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009).

In determining whether the movant has met this burden, the court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." <u>S.E.C. v. Citigroup Global Markets Inc.</u>, 673 F.3d 158, 162 (2d Cir. 2012).

In this case, the court is cognizant of the fact that the permanent injunction may cause significant hardship for Hars and the many other individuals employed by productions of *Point Break LIVE!*. This, combined with Keeling's apparent lack of interest in putting on productions of *Point Break LIVE!* herself — except as expressed in her opposition to this motion — lead the court to conclude that, all things being equal, the public interest would be better served by granting a stay. It seems clear that Hars would be more greatly harmed by an erroneous decision by this court to deny her the stay than Keeling would be by an erroneous decision to grant it.

---

that and other letters in opposition to plaintiff's motion. The court granted plaintiff's motion, not because it never received Hars' opposition and request for additional time, but for the same substantive reason it now denies the motion to stay enforcement of that injunction.

Nonetheless, however, the importance of these considerations is conditioned upon Hars' likelihood of success on appeal, a possibility that the court regards as extremely remote.

The essence of Hars' argument on appeal will, she says, be the following. Though she agrees that a work of parody may be entitled to copyright protection, that protection, she points out, only extends to the original contributions of the parodist. But Keeling's script, she contends, consists only of dialogue original to the film *Point Break* combined with such non-copyrightable elements such as stage direction and theatrical devices. Thus, she argues, there is no residue of copyrightable material in *Point Break LIVE!*

Hars' legal argument is correct, as far as it goes. But Hars errs in her assessment that *Point Break LIVE!* has no copyrightable content. Her assessment is that, because it consists only of un-protectable elements the total work itself cannot be copyrightable. But this overlooks the fact that copyright law protects not just the elements themselves, but the creative decisions made by an author in choosing how to arrange even un-protectable elements.

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348 (1991). It is worth noting that, in the Feist decision, the court made clear that even a *telephone directory*

could be copyrightable if the un-protectable factual elements were arranged with a "minimal degree" of creativity.  Thus, regardless of whether the *Point Break LIVE!* script is, in fact, exclusively composed of un-protectable elements, Keeling's creative contribution, and thus her copyright, is in "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work."  <u>Knitwaves, Inc. v. Lollytogs Ltd.</u>, 71 F.3d 996, 1004 (2d Cir. 1995).

It is therefore well established in this Circuit that Keeling's script, even if it does consist only of a creative arrangement of un-protectable elements, is entitled to copyright protection.

Hars also suggests that there is no case in this Circuit in which fair use has been used as a "sword" instead of a "shield."  And therefore, she contends, this case presents serious legal issues that the Court of Appeals might resolve in her favor.  The court agrees that there is no such case, but it does not follow from this that the legal principle at issue is undecided and requires further, serious deliberation by the Court of Appeals.  That an author may create a parody of another work and then enforce her copyright in that work against others follows straightforwardly from the text of the copyright act.  The concept of "fair use" is a legal principle employed to determine the extent and manner in which a work is permitted to copy from another.  17 U.S.C. § 107.  A work that makes fair use of another is, therefore, a derivative work.  17 U.S.C. § 101.  The original material added to a derivative work is unambiguously entitled to copyright protection, so long at the material it reuses is not reused unlawfully (e.g., if that reuse counts as a fair use).  17 U.S.C. § 103.

-4-

And again, in this case, Keeling's work contains, at the very least, a creative arrangement of un-protectable elements, an arrangement which itself constitutes a creative contribution entitled to copyright protection. Knitwaves, Inc., 71 F.3d at 1004.

The court concludes, therefore, that Hars' likelihood of success on appeal is very small. Accordingly, given the court, the public, and the parties' interest in bringing this litigation to its ultimate conclusion, as well as Keeling's legitimate interest in vindicating her copyright, Hars' motion to stay enforcement of the permanent injunction is denied.

So ordered.

Dated:   New York, New York
         March 11, 2013

                                        Thomas P. Griesa
                                        United States District Judge